May it please the Court, I'm Sean Lillette for Plaintiff Appellant Patina Biggs, and I will try to reserve two minutes for rebuttal. Under Penn Bower v. Cincinnati, a county is responsible when its officer makes a decision in the context or area where he sets final policy for the county. The question here is whether that same rule applies to sexual assault, because the county admits that if the sheriff had used excessive force in another way, that that would create municipal liability. Because the sheriff set final policy over the custody and supervision of county inmates, including how to transport them, confine them, and use force against them. And he made decisions on those subjects when he took Patina from her cell in handcuffs, confined her in his car and his house, and used excessive force against her by sexually assaulting her, all during a jail-to-jail transport, and all while she was a prisoner in his custody. And all contrary to the written policy. Yes, Your Honor, and Justice Gorsuch's decision in Simmons tells us that it doesn't matter if the action in question violates pre-existing policy. It's still an act of the county, as long as the policy-making official is acting in a context or area where he has that authority. And the district court held that on the post-trial order held that the action wasn't attributable to the county because it was unlawful, and because it served a personal agenda and not a legitimate policy goal. So could the sheriff have altered the written rules unilaterally? Could he have said, from now on, it's going to be okay for officers in this department to use their personal vehicle to transport prisoners? Yes, Your Honor. And he could have said, from now on, it's okay to not transport detainees in their prison jumpsuit. They can be transported in street clothes. Yes. And he could have said, it's fine from now on, even though we have a written policy to the contrary, if you want to take prisoners by your house on your way to court. Yes, Your Honor. Okay. And I think that actually highlights the weaknesses in the county's argument here. I mean, could he also say, you know, even though it's arguably unlawful and we have a policy against it, I'm going to now authorize relationships between officers and inmates? Yes, Your Honor. He could have done that on behalf of the county. Okay, so your position is, no matter how far out, lawful, unlawful, clearly outside his bailiwick or within it, he has the authority to change the policy unilaterally without any other intervention by anyone else? I think that's pretty much it, Your Honor. Okay, so he could, I mean, he could even have told a deputy, let's assume he didn't commit the rape. He could have told one of his deputies under your position, hey, listen, you're not supposed to be taking these detainees by your house, but I know you really like her, so go ahead, take her by your house, and that that would have been official county policy. That would be official county policy under the rule of PEMBAR because you'd be acting in a context or area, the use of force against prisoners, how to transport prisoners. The sheriff has the authority to regulate. That's the question here. What about the relationships? Relationships between guards and prisoners? Yes. I think that would be, you know, I think there you'd still be dealing with the treatment of prisoners by a guard, so that would be the defendant's authority to regulate, and in fact, the county did have a policy on relationships between guards and prisoners in this case. But I think the key difference here is that the rule in PEMBAR and in this court's precedence is whether the official is acting in an area that he's regulated as the policymaker. It doesn't matter whether that specific action was specifically authorized by state law or even whether it violated state law. So take the decision in McKay, for example, where the sheriff personally participated in an unlawful arrest while the plaintiff was out on a valid bond. Of course, that violated state law. He wasn't specifically authorized to do that. It violated the state court order allowing the plaintiff to go free. But that was still an act of the county, even though it was egregious and unauthorized and violated state law against false imprisonment. And if you take the decision in Starrett, for example, there the county assessor fired the plaintiff in retaliation for objecting to his sexual advances. And that, of course, served a personal agenda, not a legitimate policy goal, and it likely violated the laws against discrimination in Colorado, not Oklahoma. But it was still an act of the county because he had policymaking authority over how to hire and fire people. The court didn't ask, well, you know, did he have policymaking authority to hire or fire in a particular manner? Did he have policymaking authority to retaliate against, or of course he didn't. So would you agree that your position sort of rises and falls on whether we look at this at a more general rather than specific manner? Where your position is, look, he had the authority to make rules and to govern how transportation was going to occur. That would be your position. And the district court's position, you know, decision was, I guess, that would have been, to this question, would have been much more narrow. Did he have the authority to set policy when it comes to the rape of prisoners? I don't think I would put it quite like that. I would say that our position is that because he had the authority not only to transport the team, but also how to decide, you know, what are her conditions of confinement and how are you using force against inmates? Again, you know, the sheriff has the power in a Colorado statute to set policy about the custody and supervision of inmates, and a usual part of that is how do you use force against them? How do you control them? And that's what he was, that's the context he was acting in here. So do you think if the sheriff is acting in his area of authority, even if his act may be unlawful, is your position that the county would be basically strictly liable for that type of behavior? If the sheriff is performing a function that he has the authority to regulate, then the county would be liable for that. And I do want to point out that that's really not a form of respondeat superior or vicarious liability. The court addresses this in PEMBAR. There are many things that a sheriff could do within the scope of his employment that aren't in a context or area that he regulates as a policymaker. So, for example, setting salaries of deputies, for example. The county board has the authority to approve or disapprove salaries. So even though that's within the scope of his employment, I don't believe that the county would be liable for, directly liable for that because he's not a policymaker with respect to that area. Is there anything the county can do to protect itself? The county? So, yeah, for one thing, it could, I guess, so the state could change the law about, so for example, in Denver, the sheriffs have much less power over law enforcement than sheriffs in other counties. The state could change the law so that the county voters could lobby the state to change the law so that the sheriff is no longer the final policymaker with respect to certain areas. It's the sheriff's office. Who else is going to be responsible? The county commission for detention? Well, in Denver, it's the police force and the state could change the law so that the county commission has some sort of review authority over the sheriff's actions. Can you help me with this? Because here's where I struggle a little bit. What is the policy that Sheriff Hanna made? The policy is the decision to sexually assault and falsely imprison an inmate. So we have a policy for this person and then a policy for everyone else who didn't suffer that. We have two policies. I think, so Penn Bar speaks directly to this. But Penn Bar is different, isn't it? It's talking about law enforcement officials acting in a proper role as far as whether to go search the doctor's office, if I recollect correctly. And there's a legal question. Can we go in there or not? He won't let us in yet. This is just completely different. Nobody would ever suggest for a second that the sheriff could do what the sheriff did here. So it's not like Penn Bar, it's not like the employment cases where you're trying to deal with can we fire this deputy or so forth. It's just off the charts. What's the limiting principle? Is there one or is it just any time a sheriff goes AWOL, the county's liable? Well, the county concedes, again, that if the sheriff had engaged in what it calls a traditional use of force, which I take to mean a regular physical beating, that that would create municipal liability. So I don't really think there's much daylight. Even that, and obviously I'm not condoning that, but to the extent there's a beating in a jail or something, it's about the prisoner sassed or something, it's connected with the law enforcement role and abuse of that. But this is not connected in any way, shape, or form. This is purely personal satisfaction. And this court's cases, I mean, for Starrett, for example, tell us that even if the policymaker acts for personal reasons, for personal satisfaction by firing someone because she objects to your sexual advances, that doesn't change the rule in Penn Bar, which is that if you're acting in an area that you regulate, that is an act of the county. And the court repeated this in the Randall case, where it described Penn Bar at page 447 and said that when an official is acting within an area that he exercises policymaking authority, that is an official policy of the county. This is the way that Penn Bar described official policy. It said that it doesn't matter whether you're setting a rule or whether you're making a one-time decision that's inconsistent with the rule. And again, in Simmons, Justice Gorsuch made clear that even if you're acting contrary to a preexisting rule, that that could still be an act of the county. So even if the sheriff here had promulgated rules for the sheriff's department, saying how you transport prisoners, which would clearly have barred every step along the way here, that would not affect the municipal liability in this case? No, Your Honor. That's Simmons. That's the case in Simmons, where the county set a standard policy for how it was supposed to hire and fire people and just cast aside that policy and made a decision that was completely not in conformance with it. And the reason that Penn Bar imposes liability in this case is not because—so let me go back. So I think that one approach to this question—well, this is a particularly egregious use of authority, right? If we take a hypothetical—for instance, imagine that the sheriff didn't—this wasn't a one-time use of authority by the sheriff. Imagine he passed a rule—he writes a nominable book saying that I and any staff member can have sex with an inmate. Then you have a much stronger case. But I think that the Penn Bar speaks exactly to this, that there's no material distinction between a rule like that and a one-time decision because policymaking authority—and the court says this in Penn Bar—policymaking authority entails the authority not just to make rules, but to adjust those rules in particular circumstances. And that's why this was an act of the county, because the sheriff's actions represented the final word of the county on the subject. He was the only person who could decide whether this violated county policy or whether it was an authorized exception or modification to it. There was no one above him who could decide, no, that's inconsistent with county policy, that's not what we stand for, who could distance the county from his actions. And that's why it's a county policy under Penn Bar. I think this goes right back to the original intent of the Ku Klux Klan Act, Section 1983. That statute was passed to address lynchings and rapes of black Americans enabled by local authorities. An official policy that permits lynching and rape certainly doesn't serve any legitimate policy goal. It would violate state law, it would be egregious, but that's exactly what Congress designed 1983 to address. Also, of course, deliberate indifference cases, right? When a sheriff knows that inmates are going to be sexually assaulted or there's a high risk of sexual assault, it doesn't require that he act at all. If the sheriff completely fails to act, that would be an act of the county. So there's no formality requirement, there's no requirement there that he act in a particular way. Just knowing that a sexual assault is going to occur and not doing anything about it attributes to the county. And here, of course, he knew if the sexual assault was going to occur, the only difference is that he did it. So I don't think there's any principled reason, I'd suggest, to put any sort of formality requirement on an affirmative act, given that there's obviously no such requirement for inaction by a sheriff. And going back to this court's ruling in McKay, where the sheriff personally participated in an unlawful arrest, I mean, there was nothing formal about that either. So I'll save the rest of my time. I have a question. If you prevail on your legal argument, what remedy are you seeking? The court could take two paths. It could either remand for proceedings consistent with the opinion, but we would also urge that the court hold the county to the jury verdict below, because as the county agrees under the law of the case doctrine, if the court holds that the county is responsible for the sheriff's actions, that the county should be bound under the law of the case doctrine by the jury's verdict, unless the county can show a manifest injustice. Well, the case doctrine can't bind a party that was not participating on the issue. I mean, the jury verdict was against the sheriff as an individual. I don't see how law of the case applies. The few cases you had citing law of the case were quite different situations from this. Do you have any other authority that would suggest that the municipality would be bound by the verdict against the sheriff? Well, the cases we did cite show that the law of the case doctrine applies to a defendant, even though the co-defendant didn't participate in the ruling. The proceeding was changed personally. Those cases were so different. One was when the new party intervened, and when you intervene, you take it as you found it when you wanted to intervene. Those cases were pretty readily distinguishable from this situation, where the party was dismissed from the case, and then you're saying what later happens can bind that party? That doesn't sound like law of the case to me. Well, I'd go back to the lack of a dispute in the county's brief that it would be bound by the jury's verdict unless there's a manifest injustice here. First of all, the county doesn't challenge the verdict on the excessive force claim. The only arguments that the county raises that are before the court here, that there's some manifest injustice here, are surely legal arguments about two of the counts in the verdict that the county could have raised on the motion to dismiss, but didn't. For that reason alone, the law of the case doctrine applies to Biden County here. Thank you. Mr. Heddy? Good morning, your honors, and may it please the court. My name is John Hennedy, and I represent the entity defendants in this matter, namely the Cedric County Board of Commissioners and the office of the Cedric County Sheriff. To hold the entity defendants liable for Mr. Hannis' reprehensible conduct under these circumstances would amount to the very type of responding on superior liability, in fact, strict liability, the Supreme Court expressly forbids. Okay, let me ask you a question. So, do you agree that on the day this occurred, the sheriff, with no one else's inclusion, could have changed the policy to be that you can transport a detainee in your personal car and you don't have to use your sheriff's department vehicle? Yes, your honor, I believe under this, the way the statute is written in terms of the authority given to the sheriff, the sheriff would have the ultimate authority to modify his policies. Okay, and so he would have also been able to modify the policy that said you're not supposed to be taking detainees to places other than their intended location? I believe that's right, your honor. Okay, and so here's what I'm getting at. It seems to me that what's happened here happened as a result of a failure of those policies, of changing the policy from you have to be in your prison jumpsuit to you can wear street clothes. I mean, presumably you want people wearing their prison jumpsuits so if they're out, people notice that there's a detainee or a prisoner. And then on the transport issue, if someone is in an official sheriff's department vehicle, it's obvious that they're on official business. And then if you don't want people taking detainees to their homes, there's a reason for that. It's because there's no reason, at least no good reason, for that to happen. So it seems to me what happened is that the county's policies changed, and as a result the safeguards failed, and then you have a rape. It's not so much was he authorized to commit a rape, or did he commit a policy to rape people, it's you had policies that he changed that day that no longer made the inmate safe. And maybe that's gassing on a little bit long, but go ahead, do what you want with it. Well, you know, I would say with respect to the policies, the policies as written remain in place, and that's not a dispute. Well, you agree they weren't in place that day. Well, the sheriff... I think the key distinction here is the fact that it wasn't policy motivation which caused these tragic events to happen to Ms. Biggs. It was Mr. Hanna's basically personal decision to commit a crime, sexual assault for his own personal satisfaction. Do you think he... I mean, is there any evidence in the record that he did those things to further... evidence that he decided not to put her in a prison jumpsuit because he didn't want anyone to notice a prisoner going into his house? So I think it's important to note, Your Honor, that with respect to the entity defendants, we were dealing with this case from the perspective of Rule 12, so we were forced to accept the facts that were laid out in the complaint. And so based on the facts applied in the complaint, those facts were alleged, that the sheriff essentially took those acts in order to conceal his criminal activity. Can you tell me the page for the complaint in the record? Unfortunately, I cannot. Fair enough. It's an unfair question. I'm going to just look. Go ahead. When you say that it's not the policy that caused this, there was the matron program where a female officer had to accompany a female detainee during transport. And as I understand it, Sheriff Hanna did away with that. So why isn't that good enough? There was a policy that would have protected and prevented this, and he did away with it by making a policy, we're not doing that anymore. Right, Your Honor, but the key distinction here is the fact that there was purely criminal conduct. I think it would be potentially a difference... That's why you had the policy. That's why you had the matron policy, so this criminal sort of conduct wouldn't happen. Had there been a female deputy in the car, highly unlikely this would have happened. But it all goes back to the issue of whether the sheriff could have unilaterally modified that policy at will. And in fact, in this situation, he did. What distinguishes essentially that situation from what we're dealing with here is the fact that this was just purely criminal conduct. It was sex assault for purely personal reasons, which cannot be tied back to any legitimate policy goal that the sheriff's office... Well, he made a policy that enabled this to happen. What if he had done things correctly and had said, I'm taking this prisoner to the new location in her prison clothes and my business automobile, and on the way he said, hey, I'd like to stop off at my house and we can have sexual relations. She said no, and he beat her up. Then what do we have? Do we have a valid claim at that point against the county? No, Your Honor. I think essentially it all comes back to the logic applied in Pembauer and Pepbrodny. So with respect to final policymaker liability specifically, both those cases tell us that municipalities are only liable under Section 1983 for actions taken pursuant to a policy adopted by an official responsible under state law for making policy in that area of the entity's business. Now, in the immediate wake of those decisions, this circuit, this court, made its ruling in Storrow and considered both Pembauer and Pepbrodny and determined that the elected county assessor's purely personal acts of sexual misconduct against his staff were not sufficient to bind the entity in that case, despite the fact that it was undisputed that that county assessor had the ultimate authority over his staff and all employment practices within his office. So I want to point that out, Your Honor, because I think counsel kind of glossed over that fact. While the Storrow case did hold that the county could be liable for the unlawful termination, it expressly held that it could not also be liable for the sexual misconduct that occurred under those circumstances. What would it take for Ms. Biggs to have a claim here against the municipality, a municipal claim? Under the final policymaker theory? Yes. Frankly, I'm struggling to find an example where she could, given the nature of the conduct. It was sexual in nature and it was blatantly for purely personal reasons. So I'm struggling to see how that type of conduct conducted by anyone, regardless of the role, could bind an entity under Mon-El when the ultimate basis for final policymaker liability is tied to policy, and official policymaking. What if the allegation was that he committed the sexual act in retaliation for her breaking rules at the jail? Again, I think it just goes back to, at that point, it's still just a blatant sexual assault. And I'm just struggling to see how a government entity could be bound for that type of conduct. And in fact, Starrett tells us that it can't. What if she was breaking rules at the jail and he caught her and instead of sexually assaulting her, he beat her with a nightstick? Well, that goes back to the comments of this court just a few minutes ago. I think there would be a stronger argument because there you could argue that there's some rational nexus, albeit a clear abuse, rational nexus to a legitimate government policy of maintaining order in a jail. Obviously not condoning that type of conduct and surely there would be a loss. Well, in my earlier hypothetical, it was the same objective. He just used different means to inflict the punishment. Well, it would ultimately come down to what the official's motivations were. There was nothing pled in the complaint in this case that said that Sheriff Hanna was committing the sexual assault for purposes related to law enforcement or the responsibilities or authority vested in the sheriff. It was for purely personal sexual gratification. I think that's the key distinction in this case as Starrett tells us. So, just to clarify this point. So, while it's true that Hanna's role as sheriff did put him in a unique position with respect to the supervision over Ms. Biggs and in fact could have provided him with the opportunity to take advantage of her here, that only satisfies the color of law element necessary to hold Mr. Hanna liable in his individual capacity under Section 1983 and not the more nuanced policy-making element necessary to bind the entities. So, what Plaintiff is doing here is essentially asking this court to combine these distinct analyses into one inquiry, essentially into one element, which is incorrect. To the extent Plaintiff relies on this court's decision in sentence, that case is highly distinguishable. The case involved wrongful termination by a district board where it was undisputed the board was acting within its final policy-making authority to terminate employees, despite doing so in a manner that clearly contravened the written policies of the board. So, this logic is not applicable to the defendants here. Our argument is not that the county should not be liable because Hanna violated policies. Our argument is that the county and the sheriff's office should not be liable because Mr. Hanna committed blatantly egregious criminal acts for nothing but personal gratification. Well, he committed criminal acts for his personal gratification, but those were enabled by him changing certain policies. Do you agree with that? I mean, at some point he went from, in your position, authorized to unauthorized. Authorized to change dress code. Authorized to change vehicle. Authorized to change locations where he was taking a detainee. Not authorized to commit a sexual assault. Correct. That's the main distinction in this case, Your Honor. And again, as Simmons does say, to the extent that Sheriff Hanna was in fact violating policies at the time, that is irrelevant for eliminating Penn Mallory. Would you agree that if those three items of policy had not been changed, that the assault wouldn't have occurred? Not necessarily. I mean, I guess with the exception of perhaps the policy with respect to taking inmates to your home. But I mean, something like this could just as likely occur had he used an officially sanctioned vehicle, had Ms. Biggs remained in her prison guard. All Mr. Hanna would have had to do at this point would have been to pull over at a drive-thru or some secluded place somewhere and conduct a sexual assault that way. So I don't think that necessarily changes the analysis. So really the only direct authority plaintiff has to support her position is the out-of-circuit opinion in Bennett v. Pippen. The facts of that case simply put, a sheriff raped a potential criminal defendant. He was on duty at the time in the Fifth Circuit with very little analysis determined that the sheriff's office would be liable under those situations. No circuit other than the Fifth have ever held that, and indeed both the Sixth and Second Circuits in Wooten and Rowe respectively, have specifically addressed Bennett and found that it essentially provides for responding on superior order, which is not proper in the context of Section 1983. Nor do the courts holdings in McKay and Seifert, the former of which mentioned by counsel, support plaintiff's position. Because in those cases it was not disputed that the sheriffs in those situations were acting within their own final policymaking authority. For instance, in McKay, a sheriff authorized an otherwise unlawful arrest, but there was no dispute that the sheriff was acting within the course and scope of his policymaking ability to effectual arrest. With respect to Seifert, the sheriff retaliated against a reserve deputy by stripping him of his investigatory duties and eventually revoking his commission. But again, there was no dispute in that case that the sheriff was acting within his final policymaking authority to effectuate personnel matters over reserve deputies. In contrast here, Mr. Hanna had no final policymaking authority over whether to commit a blatant act of sexual assault. In sterile mandates, a county cannot be found liable for the purely personal and, in fact, criminal acts of its elected officials. I see that my time is running down, so if there are no questions, I respectfully request that you affirm the decision of the District Court of Law. Thank you. 30 seconds. Just a few quick points. First, I'd like to point out that the discussion so far has been focused on the sexual assault, but we also have the false imprisonment claim. There, McKay is directly on point because the sheriff has final policymaking authority over how to confine inmates in custody. Second, I think Judge Carson may have been on to something in that this case… Gun to first. Or two are in too. The court would also rule based on the idea that the sheriff obtained certain policies like not bringing prisoners to their home and like how to use force against prisoners in order to effectuate the assault. Because imagine if what he did, imagine if he committed a sexual assault or beat somebody up to impose discipline, which we cited literature in the plot for five weeks that that does happen. Was that your argument below? We did make an argument below both that his actions in this case were themselves official policies under Penn Bauer and that he changed certain pre-existing policies. And how do you distinguish the story? I think the story is distinguishable because there the county assessor in that case didn't have policymaking authority over actually how to handle the physical bodies of his employees. That's just not part of the assessor's office's business. And what happened there was that the court found that the assessor didn't use any official authority in his policymaking area to facilitate the harassment. Whereas here, there's abundant allegations in the complaint that the sheriff did use his authority. I actually think Starr helps us because there the county was liable for the firing because he did use his official authority in doing that. And the court also suggested that it was a quid pro quo harassment claim. So if the sheriff used his policymaking authority over hiring and firing to facilitate the harassment, for example, by threatening an employment action, that that would be an official action of the county. Because like here, he'd be using his official authority. Thank you. Are you ready to go on? I'm ready. Okay, go on. Please. Thank you, counsel. The case is submitted. Counsel are excused. And we'll turn to Hoomer.